May it please the Court, I am Robert J. McWhirter, and I represent Jonah R. This is a case about whether depriving a child of 1,061 days of his liberty should count for anything under the law. The Bureau of Prisons, according to their policy, has denied Jonah R. 35 months, nearly three years of predisposition custody from the calculation of what his sentence should be. This is against congressional intent, as is manifest in the Juvenile Delinquency Act. It's against Supreme Court precedent, as is indicated by United States v. RLC. And ultimately, it raises serious issues regarding separation of powers, given that the Bureau of Prisons policy increases the severity of punishment. And it's the executive branch, then, deciding punishment, rather than something defined by the legislative branch. Well, the real question is just what statute means. And the district judge read words such as sentence, defendant, and offense in Section 3585 as not words that would normally be used to apply to a juvenile. That is correct. What's your response? Well, my response to that is going back to RLC. The Supreme Court dealt with a similar situation and read certain parts of the adult sentencing statutes as applicable to a juvenile, basically saying that a similarly situated adult in RLC cannot be sentenced, or rather, a juvenile cannot be sentenced more than what a similarly situated adult would be sentenced under the sentencing guidelines. So in that situation, then, in a sense, the adult sentencing statutes were read as reflective of what the intent of the Juvenile Delinquency Act was, which is to provide a less severe sentencing regimen, rather than what Bureau of Prisons policy is. I'm trying to decide how to analyze this, because from the standpoint, obviously, clearly in that juveniles are different than adults. And we do use different language relative to, you know, what, I mean, they're treated differently, and whether it's something that's not necessarily a conviction, or it's not necessarily a defendant, and all of that. But my understanding is prior to, you know, what else do we look at in terms of, let's say that it is ambiguous, let's say that you can create an ambiguity, what else do we look at in terms of, you know, there's all sorts of things floating around. Obviously, the, you know, the canon of lenity for defendants in terms of apparently juveniles always got credit until this one district court case where the district court. They decided not to. That what? Yes, the district court judge in DH decided not to from the Virgin Islands. Right. And I guess no one appealed it or something, and then that changed. Now the, you know, what policy considerations are we talking about? Where can we look, you know, where, I know you gave us a, I think a last minute case that you cited, but, you know, I can look at that two ways from the standpoint. You can look at it in terms of, okay, this is part of where they're getting credit, but then on the other hand, you can also look at it when they want to say juvenile, or when they, you know, they know how to say it. And so. Well, there's several things you can look at. Yeah, I think I understand where you're going. First of all, you've got the Bureau of Prisons, which is flip-flopped. In 1999, they changed their policy and decided to deny credit for juveniles for predisposition time. That raises the question of how much deference this court should give to the agency of determination. For a lot of reasons, it should not give much deference, but specifically in this court in Young v. Reno stated, an agency's interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view. So that's the first indication. Then the second is where do you go to decide what to do with this situation? Well, the entire point of the Juvenile Delinquency Act is rehabilitation and not increasing severity of punishment. That alone, the reading of the Juvenile Delinquency Act, should indicate that this juvenile should get his credit for time served. Where else you can go is in United States v. RLC, the Supreme Court case. It would be our position that there is not ambiguity here, that the Juvenile Delinquency Act would indicate a juvenile should get his predisposition custody time credited. But even if there is ambiguity, the Supreme Court stated, we do not think that there's any ambiguity that survives. If any did, however, we would choose the construction yielding the shorter sentence by resting on the venerable rule of lenity. So the rule of lenity, which is a rule of statutory interpretation and construction, also indicates that this juvenile should get his time. The district court's order here. The district court here probably could have given this juvenile 60 months and given him credit and come out about the same, right? It could have done that. But the district court here clearly stated that this was an issue in play. In other words, the issue was presented, I objected to the pre-sentence report specifically on this point. And the district court stated, well, there can be an appeal on this issue. Well, let's say that you're right and that the juvenile should have gotten credit. Then do we send it back and does the court get to re-sentence? Yes, I would think you would. That would be one option. One option this court could have is send it back to the district court and say, look, clarify what your position was in your disposition. Your point of your disposition is to create a disposition that takes the juvenile's rehabilitative needs into effect. You shouldn't have punted that question. The other thing you can do is... The court seemed to want to give the juvenile 30 months. Yes. Regardless of whatever, whether you give him credit or not give him credit. So technically, I mean, you understand if it went back, the juvenile could get a higher sentence with the credit, right? That could be a result in this case. But really here, it doesn't matter since we move with such great speed and alacrity that time has taken care of all probably. That could be the result in this case. However, another result you could do is simply say, and this is a habeas appeal, you could order the Bureau of Prisons to grant him his pre-custody credit, and indeed, given the posture of this case, the petition for writ of habeas corpus, that is what we would urge you to do. That really this is not a direct appeal case. It is directly challenging. The defendant here is Carmona, which was the warden, and that is what we would urge you to do is order the Bureau of Prisons to give this child his 35 months predispositional custody. I will also take some issue with the district court's order here. Now I'm talking about the district court that ruled on the petition. They made several protestations that it was a strict constructionist view, and therefore, the juvenile should be denied his pretrial custody because there wasn't a specific statute. That pronouncement from the district court here turns the rules of strict construction on their head. The purpose of strict construction rules for reading penal statutes is to benefit the defendant. As quoted in RLC, it's based on the instinctive distaste against men languishing in prison unless the lawmaker has clearly said that they should. That's why we read statutes strictly that relate to how much punishment a person should get, not in order to be used as a justification to deny this benefit to a juvenile here. In that, the district court is very similar to what the district court of the Virgin Islands did in DH. Essentially, they distinguished RLC, the district court judge, in DH by saying, well, the juvenile detention statutes are different than the adult statutes, therefore, this benefit, this decrease in severity, shouldn't apply to the juvenile. If you boil these arguments down, what they are saying is, we will give a more severe punishment to a juvenile because the purpose of the Juvenile Delinquency Act is to give him a less severe punishment. If you read DH, and I've read it several times, well, I could say that as well. It is an absurd result. If you read DH carefully, and I've done that several times, you read the district court order several times, they're saying because of the Delinquency Act's purpose, we're going to ignore the purpose and give a child a more severe punishment. That's what's going on here, and that's what we've asked this court not to support. I would like to reserve a bit of time unless there's further questions now. Roberts. Why don't you save the time now, and you may have something to say in response to the government. Thank you. Good morning, Your Honors. May it please the Court, Linda Gruner on behalf of the Respondent. The Petitioner fails to direct this Court to any statutory language or case law which directly supports his argument, and he also asks this Court to ignore the manifest intent of the district court. Can I direct you to the statutory language to which our attention was recently directed, that is to say, yesterday afternoon in the 28J letter? The Treaty Transfer Statute, Your Honor? That is to say, I have a letter from Mr. McWhorter dated January 6th that was received in my office yesterday afternoon. Do you have that letter? Your Honor, the only letter I received was referring to the Treaty Transfer Statute. That's the letter. Is that the one? Yes. And my position, Your Honor, would be that those statutes, his citation to those statutes is irrelevant, because as those statutes specifically say in the scope and limitation of Chapter at Section 4100, that those statutes apply only to cases involving the transfer to or from cases of a foreign country. But here's the potential relevance of the statute cited in this letter. The argument that proved persuasive to the district judge in this case was that the words used in Section 3585, sentence, defendant, and offense, are not words that are normally used with respect to juveniles. Correct, Your Honor. And therefore, this statute, 3585, which gives credit for pretrial incarceration doesn't apply. Correct, Your Honor. But I read this statute, which is to which our attention has now recently been directed, which clearly does apply to juveniles. And this statute says, defines offender as a person, ellipsis, who has been a judge to commit an act of juvenile delinquency. So clearly, offender in this statute includes a juvenile delinquent. And then the custody statute, the transferred offender should be given credit toward service of the sentence for any days, dot, dot, dot. So both the word offender and the word sentence are used here explicitly, referring to, please, referring to juveniles. So I have trouble reading 3585 to use words in a different way than they're used here. So what's your response? My response, Your Honor, is quite simply that these statutes show that Congress knew how to make credit apply to juveniles when it chose to. But Congress also, by its clear language, made this statute, this group of statutes, applicable only to cases involving transfers to and from foreign countries. That's the clear language, Your Honor, at 4100. Very clear language in this statute because that's what it does. Yes. And I think tells us something about what Congress thinks the word sentence and offender might possibly include. And therefore, it's hard to say, well, you know, by the clear language of 3585, sentence and offender can't possibly include juvenile. Well, obviously, they do in this other statute passed by Congress. Well, yes, Your Honor. That's exactly my point, that when Congress chose to make that apply, it quite clearly did. And I would point this Court out to its own 1995 case. By the argument sentence and offender should never – by your argument, sentence and offender should never apply to juveniles. No, Your Honor. That is not my argument. My argument is we must look to the language of the statute which applies. And in this case, we are specifically talking about the juvenile proceedings, which are found in one section, and adult sentencing provisions, which are found in a totally different section. And Congress amended the juvenile statute to include certain aspects of adult sentencing provisions, for instance, credit for good time after disposition, but it did not after – even though it amended the juvenile provisions twice, 1986 and 2002, it did not include the credit for predisposition or pretrial custody, which is found in the adult section. Let's assume, though, that I don't agree with you that we can resolve it on the – that I don't think that the language is clear. Let's assume that I get to the – that I think I have to look elsewhere. Yes, Your Honor. Can you tell us why Congress would want to treat the juveniles in this rather harsh way? Well, Your Honor, I don't believe that the Court should consider this a harsh way. First of all, Congress made clear, and the law in this circuit is also clear, that juvenile proceedings are totally separate, and that Congress considered and rejected adult sentencing provisions when it created the juvenile provisions. So you – What other goals or policies are we furthering by not giving juveniles credit? We are not furthering a goal or policy, Your Honor. The Respondent is asking only for this Court to determine whether or not it has any statutory authority. That's the whole basis for its decision, not anything else. If the Court – if the district court had ordered the defendant to be sentenced – detained until the age of 21, we would be in the same position. Could the defend – the Petitioner then have any credit for custody? There's no language to find that. The Petitioner's – But the Bureau of Prisons gave credit before this particular case, right? Yes, Your Honor. Right. So on the issue of deference to them interpreting, that seems a little bit hard, if they interpret it one way before and then another way after. Your Honor, what this Court must consider is that, faced with a court interpretation, the Bureau, and only then did the Bureau change its provision. There is no language, no statutory language that the defendant – the Petitioner can point to or that this case law finds that shows clearly that there should be credit for predisposition custody. But the Bureau thought that they deserved credit before the Court said otherwise. Yes. Because the Bureau treated it as, you know, the adult sentencing provisions. But once it was faced with a court decision that said, no, that is wrong, what choice did the Bureau have? It would then have been violating the court's findings. Oh, wait a minute. It's a district court decision that conflicts with prior district court decisions. The Bureau is clearly picking and choosing among district courts. No, Your Honor. I don't believe that that is correct, because neither the Respondent nor the Petitioner found any other cases directly on point to say that the juvenile should or should not. Were there none at all with respect to the predecessor statute, the 3585? None. None that we found, Your Honor. We honestly made a very diligent search. I may be mistaken that there were earlier district court opinions. We found none, Your Honor. And I would also, again, try to remember that this Court itself, in the 1995 case of United States v. Doe, made a very closely analogous decision. In that case, the Court was looking at whether or not a sentence to supervised release after detention for a juvenile was a proper sentence. And in 1995, when that case was decided, there was no provision under Section 5037 for supervised release for juveniles. And this Court said that Section 3583, where the provisions for supervised release are found, does not apply to juveniles because juveniles are not defendants who are convicted of felonies or misdemeanors. And so, therefore, a sentence to supervised release was illegal, and they reversed that district court opinion. The language there, of course, is different, and you quoted it accurately. The language in that statute said felonies or misdemeanors, and we know that felonies and misdemeanors are not something for which juveniles are convicted. On the other hand, this statute says offenses. Yes, Your Honor. But it also says defendants, and it also says term of imprisonment. And defendants, offenses, and term of imprisonment does not apply to juveniles. Juveniles receive a civil adjudication of status, and they do not receive a conviction for either a felony or a misdemeanor. And that is the great benefit of the juvenile provisions for which this Petitioner fought. He fought to have the protection of the district court. Now, what's your argument? On what do you rely when you say a juvenile sentenced to incarceration is not being sentenced to imprisonment? Your Honor, the statutory language is a term of detention, not imprisonment. And what's the difference? Is the juvenile not going to prison? They are not in a prison, no, Your Honor. They are in a detention facility, but not a prison, an adult prison facility. Well, didn't this person, though, become an adult and then spent considerable time in custody as an adult, too? Your Honor, that was, as this Court held, a void transfer order at the time. So, yes, he did serve a period of time during which he was transferred to the adult facility, but because the decision by the district court was improper and that that court lacked jurisdiction, the order became void. A void transfer order is no authority for which to base credit for predisposition custody. This Court itself said that the transfer was void. That was this Court's holding. Now, granted, a year or so later, that was overturned by this Court, finding that that issue of juvenile record certification was not, in fact, jurisdictional. But at that time, the Petitioner's case was already final. The Petitioner did not appeal. And the Petitioner also did not ask for clarification at sentencing. The Petitioner raised all of these same arguments to the district court, and the district court chose to sentence him to 30 months. Okay. Is there no further questions, Your Honor? Thank you very much. We'd ask for affirmance. Thank you. As I just said, three brief points in response. The arguments about there are no statutes allowing for this, the flip side, the other side of that coin is there are no statutes precluding this. Those kind of rhetorical niceties, one side versus the other side, have to be given weight only in the context of some dispute or statute. Here, the context is the Juvenile Delinquency Act's provisions that allow for less severe punishment and, in fact, dictate less severe punishment. So those arguments on the government side should fall in favor of the arguments for the juvenile here. The second point is, again, reading D.H. and the district court's order, it essentially makes a flim-flam out of the promise of the Juvenile Delinquency Act. The statute that I cited to, which was the treaty transfer statute, provides juveniles credit for pretrial custody. An American citizen juvenile that commits a crime in Canada or Mexico then gets transferred, according to this statute, gets his pretrial custody. His brother, who commits the same act of juvenile delinquency in the United States, does not. This result purely comes from Bureau of Prisons policy. My final point is that the legal niceties of the government's argument about the over two years that this juvenile spent in adult status should pale in comparison to what William Blackstone in his commentary stated. A man cannot suffer more punishment than the law assigns, but he may suffer less. If that proposition is true for a man, it most certainly must be true for a boy. Thank you. Okay, thank you very much. I thank both sides for their helpful argument in this case. The case of Jonah R. v. Carmona is now submitted for decision.
judges: Noonan, W. Fletcher, Callahan